# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# TERRE HAUTE DIVISION

| | |
|---|---|
| STEVEN L. BARKER, | ) |
|            Plaintiff, | ) |
|      vs. | ) Cause No. 2:10-cv-314-WTL-WGH |
| LT McPHERSON, et al., | ) |
|            Defendants. | ) |

## ENTRY FOLLOWING BENCH TRIAL

A bench trial in the above-captioned cause was held on January 13, 2015. In lieu of final arguments, the parties submitted post-trial submissions on January 23, 2015. Dkt. Nos. 98-99. Pursuant to Federal Rule of Civil Procedure 52(a)(1), the Court now issues its findings of fact and conclusions of law.

## I. BACKGROUND

### A. Procedural History

On November 22, 2010, *pro se* Plaintiff Steven L. Barker filed suit alleging excessive force and related claims against the Bureau of Prisons ("BOP"), Lt. Lloyd McPherson, Lt. Eric Emmerich, Senior Officer Larry ("Fred") Bobo, SIA Jaeger, and 100 anonymous correctional officers pursuant to *Bivens v. Six Unkonw Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). In his complaint, Barker alleged, in part, that Lt. Emmerich used excessive force against him in violation of his Eight Amendment rights. Compl. at 11. He further alleged that Lt. McPherson, Officer Bobo, and SIA Jaeger falsified documents, committed assault and battery, conspired to cover up the incident with Lt. Emmerich, and/or were deliberately indifferent to Lt. Emmerich's use of excessive force and Barker's medical needs.

On November 16, 2011, the claims against the BOP and the 100 anonymous correctional officers were deemed "legally insufficient" and dismissed from the suit. Dkt. No. 13 at 1. Thereafter, the remaining Defendants filed a motion for summary judgment. On July 25, 2013, the Court granted in part and denied in part the Defendants' motion, ruling as follows:

> [T]he motion for summary judgment [Dkt. 31] is **granted** as to all claims asserted against Jaeger. The motion for summary judgment [Dkt. 31] is also **granted** as to the claims of falsifying documents, assault and battery, conspiracy, and deliberate indifference in delaying medical care asserted against Lt. McPherson and Officer Bobo.
>
> The motion for summary judgment [Dkt. 31] is **denied** as to the claim of excessive force asserted against Lt. Emmerich and as to the claims of deliberate indifference for failure to intervene against Lt. McPherson and Officer Bobo.

Dkt. No. 50 at 10-11 (emphasis in original).

On September 18, 2013, the Court granted Barker's motion to appoint counsel, and on October 4, 2013, the Court appointed volunteer counsel, John Andrew Goodridge. Thereafter, Barker was permitted to file an amended complaint and did so on July 1, 2014. The amended complaint contained the following claims against the following parties:

| | | |
|---|---|---|
| Count I | | Violation of constitutional rights for the use of excessive force and/or failing to intervene against the United States, Lt. Emmerich, Lt. McPherson, and Officer Bobo |
| Count II | | Assault and battery against the United States and Lt. Emmerich |
| Count III | | Violation of constitutional rights for deliberate indifference to Barker's medical needs against the United States, Lt. Emmerich, Lt. McPherson, and Officer Bobo |
| Count IV | | Gross negligence against the United States, Lt. Emmerich, Lt. McPherson, and Officer Bobo |
| Count V | | Intentional infliction of emotional distress against the United States, Lt. Emmerich, Lt. McPherson, and Officer Bobo |

Thereafter, the Defendants moved to dismiss several of Barker's claims, and on October 9, 2014, the Court granted the motion. The following claims remained for trial.

| | |
|---|---|
| Count I | Violation of constitutional rights for the use of excessive force and/or failing to intervene against Lt. Emmerich, Lt. McPherson, and Officer Bobo |
| Count II | Assault and battery against the United States |
| Count IV | Gross negligence against the United States (in relation to the excessive force and deliberate indifference of Lt. Emmerich, Lt. McPherson, and Officer Bobo) |
| Count V | Intentional infliction of emotional distress against the United States |

On the morning of trial,[1] Barker orally moved to dismiss his failure to intervene claims against Lt. McPherson and Officer Bobo, and the related gross negligence claims against the United States. The Court **GRANTED** Barker's motion, and the trial proceeded as to Barker's excessive force claim against Lt. Emmerich and the related assault and battery, gross negligence, and intentional infliction of emotional distress claims against the United States.

### B. Trial Testimony

The following is a summary of the testimony given at trial.

#### 1. Barker

On the evening of March 11, 2009, Barker was removed from his cell in the Federal Correctional Complex in Terre Haute, Indiana ("FCC Terre Haute") and questioned regarding an assault on another inmate, Steven Marsh. Apparently, Marsh is a convicted child molester. After Barker refused to speak with Lt. Emmerich about the assault on Marsh in the TV room outside his cell, he was summoned to the Lieutenant's office for further questioning. At that point,

---

[1] Although Barker originally demanded a trial by jury, Barker subsequently requested a bench trial and the Government did not object. Therefore, a bench trial was held.

Barker knew that he was being sent to the Segregated Housing Unit (the "SHU") in the prison while the staff investigated whether he assaulted Marsh. After Lt. Emmerich finished the transfer paperwork, Officer Bobo was called to escort Barker to the SHU.

Once Officer Bobo arrived, he handcuffed Barker behind his back. Barker then asked Officer Bobo if he could have his glasses from his cell. Before Officer Bobo could answer, Lt. Emmerich said "fuck you, you ain't got nothing coming." Barker responded by saying, among other things, "fuck you, too. . . . I don't know why you so screwed up about a child molester." Apparently angered by Barker's words, Lt. Emmerich assaulted Barker. He slammed Barker's head into a wall of metal mailboxes a number of times, slammed his head into a steel cage on the opposite side of the office, slammed his head into a nearby refrigerator, slammed him onto the floor, picked him back up, rammed him into the mailboxes again, and then slammed him to the floor one last time. With the final slam to the floor, Lt. Emmerich pushed his knee against Barker's ribs with so much force that Barker defecated on himself. After seeing what Barker described as a pool of blood on the floor, Lt. Emmerich eased off of Barker and brought him to his feet. Barker never resisted Lt. Emmerich's force, although he believes that Lt. Emmerich yelled "quit resisting, quit resisting" during the assault to give others the impression that Barker was in fact resisting.

Thereafter, Officer Bobo escorted Barker out of the Lieutenant's office. Several moments later, Lt. Emmerich radioed Officer Bobo and asked him to bring Barker back to the Lieutenant's office so that they could photograph his injuries. Barker refused to return to the Lieutenant's office and advised Officer Bobo that, if Lt. Emmerich wanted to kill him, he would have to do it in the hallway in front of the cameras.[2] Lt. Emmerich brought a camera into the hallway and

---

[2] There were no cameras in the Lieutenant's office.

took a photograph of Barker from the chest up. Barker asked Lt. Emmerich to take additional pictures because he also had injuries below his chest, but Lt. Emmerich did not. Officer Bobo then escorted Barker to the SHU.

Barker suffered a 4-centimeter laceration above his left eye that required stiches, two other lacerations on his head, a shoulder injury, a knee injury, bruised ribs, and various other cuts, scrapes, and bruises during the incident. He was in serious pain and unable to move for almost a week after the incident, and it was several months before the pain in his knee and shoulder subsided.

*2. Lt. Emmerich*

Lt. Emmerich, now a Captain at a prison in Oxford, Wisconsin,[3] remembers the incident differently.

On March 11, 2009, Lt. Emmerich was told that Barker had assaulted Marsh. As a result, a "lockdown" was called, and Lt. Emmerich began investigating the allegation. Barker was summoned to the Lieutenant's office, and Lt. Emmerich questioned him regarding the assault. Once Barker was in the Lieutenant's office, he became increasingly agitated after hearing that he was being sent to the SHU. While Lt. Emmerich questioned Barker, the volume of Barker's voice continued to rise and his physical posturing indicated that he was angry and upset. After Officer Bobo arrived at the Lieutenant's office and handcuffed Barker, Barker spat on Lt. Emmerich while he was yelling.[4] At that point, Lt. Emmerich believed force was required to take control of the situation. With Barker handcuffed, Lt. Emmerich grabbed Barker and pushed him

---

[3] For the sake of clarity, the Court will continue to refer to Emmerich as Lt. Emmerich.

[4] Whether the spit was intentional or not, is not entirely clear from Lt. Emmerich's testimony.

against the wall with the metal mailboxes. Because Barker resisted Lt. Emmerich's force, he took him down to the floor and held him on the ground for a brief moment. After Barker indicated that he was done resisting, Lt. Emmerich picked him up, and Officer Bobo escorted him out of the Lieutenant's office.

### 3. Lt. McPherson

Senior Officer Specialist Lloyd McPherson, now a Lieutenant,[5] testified that he was sitting at a desk in the Lieutenant's office while Lt. Emmerich questioned Barker. During their discussion, Lt. McPherson observed Barker become very angry and argumentative. After Officer Bobo arrived, Lt. McPherson saw Barker make "a spitting motion" towards Lt. Emmerich, but he did not see any spit. This testimony, however, is in contrast to the statement Lt. McPherson gave to an investigator after the incident, his memorandum documenting the incident, and the affidavit he submitted previously in this case.

In the memorandum, Lt. McPherson reported that "Inmate Barker started to yell and [became] visibly upset. Barker then spit on Lt. Emmerich at which time he was placed on the ground to regain control." Trial Ex. 9.

The investigator's notes, however, state that "Lt. McPherson . . . told [him] that he did not actually see the inmate spit." Trial Ex. 11.

Lt. McPherson's affidavit further stated as follows:

> I heard a commotion and looked up and saw the Plaintiff *attempt to spit* on Defendant Emmerich. I recall Defendant Emmerich had a wet spot on his clothing, but I do not remember the exact spot. I then saw Defendant Emmerich place the Plaintiff on the ground to gain control by grabbing him and putting him on the ground. This all happened in a matter of seconds. At this time, the Plaintiff was restrained behind his back. I believe his head hit the floor, but I do not know for sure. I observed Defendant Emmerich fall on top of the Plaintiff when he went to the ground. I assisted with helping the Plaintiff to his feet.

---

[5] For the sake of clarity, the Court will continue to refer to McPherson as Lt. McPherson.

Dkt. No. 32-3 at ¶ 4.

### *4. Officer Bobo*

According to Officer Bobo, after he arrived at the Lieutenant's office, he handcuffed Barker. At that time, Barker was in a heated discussion with Lt. Emmerich. Barker expressed disbelief that they were going to "lock him up for taking care of a child molester." Once handcuffed, Barker "jerked" aggressively towards Lt. Emmerich. He then observed Lt. Emmerich place Barker against the wall with the metal mailboxes. Barker resisted the force, and Lt. Emmerich took him down to the floor. Officer Bobo assisted in restraining Barker by grabbing one of his legs. After Barker calmed down, Officer Bobo escorted him out of the Lieutenant's office. When Lt. Emmerich asked Officer Bobo to bring Barker back to the Lieutenant's office to take photographs, Barker refused to go. As a result, Officer Bobo asked Lt. Emmerich to come out into the hallway to take the photographs, and he did.

### *5. Chris Perdue*

Chris Perdue, a Case Manager at FCC Terre Haute, testified that Barker was investigated by the prison for spitting on Lt. Emmerich, and thus assaulting him. Barker chose Perdue to assist him during those proceedings. The prison did not find the allegation credible, and Barker was not disciplined or charged in relation to the incident with Lt. Emmerich.

Perdue also testified that Barker was well-respected by other inmates in the prison, and because of this, he occasionally asked Barker to facilitate discussions between the prison staff and the inmates. Barker, however, denied doing any "favors" for Perdue.

## II. **FINDINGS OF FACT**

1. On March 11, 2009, Barker was an inmate at FCC Terre Haute.
2. On March 11, 2009, Marsh was an inmate at FCC Terre Haute.

3. On that day, Lt. Emmerich, Lt. McPherson, and Officer Bobo were working the evening shift at FCC Terre Haute.

4. During his shift, Lt. Emmerich received information that Barker had assaulted Marsh.

5. Because of the assault, an emergency "lockdown" was called.

6. During the lockdown, Barker was removed from his cell and taken to the TV room.

7. Lt. Emmerich questioned Barker in the TV room regarding the assault on Marsh.

8. Barker refused to discuss the assault on Marsh with Lt. Emmerich.

9. Barker was summoned to the Lieutenant's office for additional questioning.

10. Lt. McPherson and Lt. Emmerich were in the Lieutenant's office when Barker arrived.

11. While in the Lieutenant's office, Lt. Emmerich advised Barker that he was being transferred to the SHU while the staff investigated the assault.

12. Barker became angry and argumentative when Lt. Emmerich told him that he was being transferred to the SHU.

13. After Lt. Emmerich finished preparing the transfer paperwork, he radioed for Officer Bobo to escort Barker from the Lieutenant's office to the SHU.

14. When Officer Bobo arrived at the Lieutenant's office, he handcuffed Barker's wrists behind his back.

15. As Officer Bobo began to escort Barker from left the Lieutenant's office, Barker and Lt. Emmerich became involved in a verbal altercation.

16. Barker and Lt. Emmerich cursed at one another.

17. During the altercation, Barker unintentionally spat on Lt. Emmerich while he was yelling.

18. Lt. Emmerich subsequently used force on Barker.

19. Lt. Emmerich grabbed Barker and forcefully threw him against a wall containing metal mailboxes.

20. Lt. Emmerich shoved Barker's head into the metal mailboxes.

21. Lt. Emmerich then threw Barker to the floor.

22. Lt. Emmerich landed forcefully on Barker's back and rib area with his knee.

23. Lt. Emmerich held Barker to the ground with his knee for several moments.

24. After Barker indicated that he would not resist or fight, Lt. Emmerich pulled Barker to his feet.

25. Officer Bobo then escorted Barker from the Lieutenant's office.

26. Barker suffered a 4-inch laceration above his left eye, two other lacerations on his forehead, a shoulder injury, a knee injury, bruised ribs, and various other cuts, scrapes and bruises as a result of the incident with Lt. Emmerich.

### III. CONCLUSIONS OF LAW

#### A. Counts I and II – Excessive Use of Force against Lt. Emmerich and Assault and Battery against the United States

To succeed on his claim of excessive use of force against Lt. Emmerich, Barker must prove by a preponderance of the evidence that (1) Lt. Emmerich used force on him, (2) Lt. Emmerich intentionally used extreme or excessive cruelty toward him for the purpose of harming him, and not in a good faith effort to maintain or restore security or discipline, and (3) Lt. Emmerich's conduct caused him harm. *See Whitley v. Albers*, 475 U.S. 312, 320-21 (1986); *Williams v. Boles*, 842 F.2d 181 (7th Cir. 1988). It is undisputed that Lt. Emmerich used force on

Barker. It is also undisputed that Lt. Emmerich's conduct harmed Barker. With regard to the only element in question, the Court finds that Lt. Emmerich used excessive force against Barker for the purpose of harming him, and not in a good faith effort to maintain or restore security or discipline.

Despite the fact that Barker's wrists were cuffed behind his back, Lt. Emmerich threw Barker into a wall with metal mailboxes, shoved his head into the mailboxes, threw Barker onto the floor, and held Barker to the ground with this knee. Barker's injuries support this set of events. While *some* amount of force *may* have been warranted, Lt. Emmerich's use of force was excessive under the circumstances.

With regard to Barker's corresponding assault and battery claim against the United States under the Federal Tort Claims Act ("FTCA"), the FTCA waives the Government's sovereign immunity only "under circumstances where . . . a private person . . . would be liable" under applicable state tort law. 28 U.S.C. § 1346(b)(1). A person commits the civil tort of assault and battery in Indiana if "(a) he acts intending to cause a harmful or offensive contact with the person of the other or third person, or an imminent apprehension of such contact, and (b) a harmful contact with the person of the other directly or indirectly results." *Singh v. Lyday*, 889 N.E.2d 342, 360 (Ind. Ct. App. 2008) (quoting *Mullins v. Parkview Hospital, Inc.*, 865 N.E.2d 608, 610 (Ind. 2007)). "A touching, however slight, may constitute an assault and battery." *Id.* (quoting *Knight v. Ind. Ins. Co.,* 871 N.E.2d 357, 362 (Ind. Ct. App. 2007)).

As noted above, despite the fact that Barker's wrists were cuffed behind his back, Lt. Emmerich threw Barker into a wall with metal mailboxes, shoved his head into the mailboxes, threw Barker onto the floor, and held Barker to the ground with this knee. Lt. Emmerich's use of force was excessive under the circumstances. These facts satisfy the elements of assault and

battery in Indiana: Lt. Emmerich acted intending to cause harmful or offensive contact with Barker, and harmful contact resulted.

Pursuant to the FTCA's judgment bar rule, codified at 28 U.S.C. § 2676, however, a judgment against both Lt. Emmerich and the United States cannot stand. *See, e.g.*, *Manning v. United States*, 546 F.3d 430, 434 (7th Cir. 2008) ("an FTCA judgment [whether successful or unsuccessful] bars a *Bivens* claim raised in the same suit." *Manning*, 546 F.3d at 434. As such, the Court will enter judgment in favor of Lt. Emmerich and against the Plaintiff on Count I and in favor of the Plaintiff and against the United States on Count II.

With regard to damages, the Court finds that Barker's compensatory damages total $1,500.00.

### B. Count IV – Gross Negligence against the United States

With regard to Barker's gross negligence claim, Indiana courts recognize the same four elements (duty, breach, cause, and injury) for negligence and gross negligence. *See N. Ind. Public Serv. Co. v. Sharp*, 790 N.E.2d 462, 465-66 (Ind. 2003). The two claims, however, have different definitions of what constitutes a "breach." For ordinary negligence, a plaintiff must show that the defendant "merely failed to exercise its duty of care." *Id.* at 465. For gross negligence, a plaintiff must show that the defendant "breached its duty . . . by engaging in a conscious, voluntary act or omission in reckless disregard of the consequences to" the plaintiff. *Id.* at 466.

Barker has not argued or established how each element is satisfied in this case. Thus, the Court finds in favor of the United States and against Barker on Count IV.

### C. Count V – Intentional Infliction of Emotional Distress against the United States

Lastly, "intentional infliction of emotional distress is committed by 'one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another." *Branham v. Celadon Trucking Servs., Inc.*, 744 N.E.2d 514, 522-23 (Ind. Ct. App. 2001) (quoting *Ledbetter v. Ross*, 725 N.E.2d 120, 123-24 (Ind. Ct. App. 2000)). "The intent to harm emotionally constitutes the basis of the tort." *Id.* at 523 (citing *Ledbetter*, 725 N.E.2d at 124). "Thus, the elements of the tort are: a defendant (1) engages in extreme and outrageous conduct that (2) intentionally or recklessly (3) causes (4) severe emotional distress to another." *Id.* (citing *Bradley v. Hall*, 720 N.E.2d 747, 752 (Ind. Ct. App. 1999)).

Again, Barker has not argued or established how each element is satisfied in this case. Therefore, the Court finds in favor of the United States and against Barker on Count V.

## IV.    CONCLUSION

The Court finds in favor of Barker and against the United States on his claim for assault and battery (Count II). Barker's compensatory damages total $1,500.00.

The Court finds in favor of the United States and against the Plaintiff on his remaining claims for gross negligence (Count IV) and intentional infliction of emotional distress (Count V).

Pursuant to the FTCA's judgment bar rule, judgment will be entered in favor of Lt. Emmerich and against Barker on his claim for excessive force (Count I).

A separate judgment shall now issue.

SO ORDERED: 5/4/15

                                            Hon. William T. Lawrence, Judge
                                            United States District Court
                                            Southern District of Indiana

Copies to all counsel of record via electronic communication.